**Fred A. BAKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7882.

Court of Appeals of Alaska.

April 15, 2005.

Paul Malin, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION.

COATS, Chief Judge.

A jury convicted Fred A. Baker of felony driving while intoxicated[1], felony refusal to take a breath test,[2] driving with license revoked,[3] and criminal mischief in the third degree.[4] Superior Court Judge Gregory J. Moytka sentenced Baker to 11½ years' imprisonment. In his written judgment, Judge Motyka made this sentence consecutive to Baker's former sentence for felony driving while intoxicated and felony refusal to take a breath test, a sentence of 5 years of imprisonment, resulting in a composite sentence of 16½ years of imprisonment.

On appeal, Baker argues that Judge Motyka erred in denying his motion to dismiss which was based on Criminal Rule 45, the Speedy Trial Rule. We conclude that Judge Motyka did not err in denying Baker's motion to dismiss.

Baker raises several arguments about his sentence. In his most important argument, Baker argues that Judge Motyka did not, in his oral sentencing remarks, state that he was imposing the sentence consecutively to Baker's former sentence. He argues that we should hold that Judge Motyka therefore imposed the sentence to be served concurrently with his former sentence, resulting in a composite sentence of 11½ years of imprisonment. We agree with Baker for the reasons explained in this opinion.

Baker also argues that Judge Motyka made several errors in imposing his sentence and that his sentence is excessive. We conclude that Judge Motyka made errors in imposing the sentence. We therefore remand the case to allow Judge Motyka to reconsider the sentence.

### Factual background

On May 4, 1999, Anchorage Police Officer Richard Steiding observed Fred A. Baker driving erratically. Baker stopped abruptly at 13th Avenue, proceeded through the parking lot of the Carrs supermarket at the speed of 15–20 miles per hour, cut across the parking lot, and drove down the sidewalk, traveling eastbound on 13th Avenue. Officer Steiding pursued Baker and located the vehicle parked in the Carrs parking lot, parked in front of a "No Parking" sign. Anchorage Police Officer Joel Breiner arrived to assist and subsequently arrested Baker. Officer Breiner transported Baker to a police substation for processing.

Baker twice refused to take a breath test. Baker asked for an independent test and was transported to Alaska Regional Hospital, where he insisted on having only a urine test. Baker's urine tested positive for alcohol, cocaine and marijuana. While he was being taken to the magistrate for a bail hearing,

1. AS 28.35.030(a)(1), (n).

2. AS 28.35.032(a), (p).

3. AS 28.15.291(a).

4. AS 11.46.484(a)(1).

Baker began growling and biting the back-seat of the officer's patrol car. The officers restrained Baker, but he remained combative despite the restraints.

Baker was indicted on one count each of felony driving while intoxicated and felony refusal to submit to a chemical test. He was also charged with driving while license revoked, and third-degree criminal mischief. A jury convicted Baker of all the charges.

*Judge Motyka did not err in denying Baker's Criminal Rule 45 motion to dismiss*

Baker's motion to dismiss turns on the events of October 11 and 12, 1999. On October 11, 1999, Baker appeared at a trial call before District Court Judge Natalie K. Finn. Baker's counsel told the court that she would be unavailable for trial October 13 through October 26. The prosecutor informed the court that the State had witnesses who would be unavailable from October 6 through 18 and October 21 through December 5. Judge Finn concluded that the parties would be unavailable until December 6, and started to set a trial call on that date. But Baker interjected and stated that he did not agree to a continuance. He stated that he wanted to go to trial immediately.

Baker's attorney told the court that she had explained to Baker that if he wanted to have another attorney represent him on short notice, he could go to trial the next day. Judge Finn explained to Baker that the State was ready for trial and he was not. She explained that he could start his trial the next day with a new attorney who was unfamiliar with his case, or he could move for a continuance—which would toll Rule 45 until December 6. Judge Finn told Baker he should discuss his options with his attorney.

After discussing the matter with his attorney, Baker stated that he was not willing to agree to waive any additional time under Criminal Rule 45. He asked to go to trial immediately. After some discussion, Judge Finn stated that the parties could pick a jury on October 15 (a Friday) and present evidence on October 19 and 20. She entered an order setting trial for October 15. Baker's attorney explained that she had never been

in this position before and would talk to the supervising attorneys in her office about how to handle Baker's case. She explained that having a client go to trial on such short notice with a different attorney was not a normal procedure.

Apparently that same afternoon, presiding Superior Court Judge Elaine M. Andrews issued an order setting trial in Baker's case for October 12, 1999. The parties received notice on October 11 by telephone. The next day, Baker's attorney filed a notice with the court that she would be unavailable from October 13, 1999 through October 26, 1999. The State responded with the dates when its witnesses would be unavailable. Judge Andrews recalculated Criminal Rule 45, and set trial for December 7, 1999. Baker, now represented by a new attorney, filed a motion to dismiss under Criminal Rule 45 on that date. Baker waived time from that date to allow the motion to be decided and to allow the matter to be reset for trial if necessary. Judge Motyka denied Baker's motion to dismiss and Baker was convicted in a jury trial.

■ In rejecting Baker's Criminal Rule 45 motion to dismiss, Judge Motyka found that Baker's attorney had moved for a continuance from October 13 through October 26. He found that because the attorney had moved for this continuance, the State was put in a position of having its witnesses unavailable through December 5, 1999. He found that because of Baker's counsel's unavailability that Rule 45 was tolled from October 13 through December 5, 1999. Baker's contention on appeal is that Judge Motyka erred in making this finding.

To understand Baker's argument, we first turn to the wording of Criminal Rule 45(d)(2) which excludes from Criminal Rule 45 "[t]he period of delay resulting from . . . [a] continuance granted at the timely request or with the consent of the defendant and the defendant's counsel." Baker reads the rule to mean that his attorney could not consent to a continuance which would exclude time under Criminal Rule 45 unless Baker also consented to the continuance. Baker relies on our

decision in *State v. Jeske.*[5] In *Jeske,* we stated:

> When defense counsel has requested or consented to a continuance, a judge setting the date for the defendant's trial is entitled to rely upon the fact that [Criminal Rule 45] is tolled during that continuance, at least until the judge is affirmatively apprised of the defendant's objection to the continuance. Once it is clear that the defendant has not consented and will not consent to the continuance, Rule 45(d)(2) directs the trial judge to restart the Rule 45 clock.[6]

Baker argues that in the October 11 hearing he made it clear that he would not agree to a continuance under Criminal Rule 45. He argues that it was therefore clear that when his attorney informed the court that she would be unavailable from October 13 to 26 in response to Judge Andrews' order setting his trial for October 12, that he did not agree to a continuance. Baker argues that since he did not consent to a continuance, none of the period of delay which resulted from the continuance should have been excluded from calculating Criminal Rule 45. He therefore argues that he was not brought to trial within the time period authorized by Criminal Rule 45 and his case should therefore be dismissed.

One problem with Baker's argument is that he relies on the language in *Jeske v. State,* where we state that "[o]nce it is clear that the defendant has not consented and will not consent to the continuance, Rule 45(d)(2) directs the trial judge to restart the Rule 45 clock."[7] Baker assumes that *Jeske* holds that Criminal Rule 45(d)(2) requires the defendant to consent to any continuance requested by defense counsel. But this reading of *Jeske* overlooks Footnote 1 in that case. In Footnote 1, we specifically declined to resolve whether Criminal Rule 45(d)(2) requires the consent of both the attorney and the defendant to exclude delay caused by a continuance. We stated that we would only "assume, for purposes of deciding this case, that Rule 45(d)(2) requires the defendant's consent to any continuance requested by defense counsel."

And we again conclude that it is unnecessary to decide whether Baker needed to consent to the continuance to resolve the present case. Even if we assume that Baker had to consent to any continuance before the period of delay resulting from the continuance could be excluded under Criminal Rule 45, in *Jeske* we pointed out that "this court and the Alaska Supreme Court have repeatedly stated that the trial court can rely on a defense attorney's request for a continuance and need not seek a separate, personal consent from the defendant unless the defendant affirmatively objects to the defense attorney's action."[8] Therefore Judge Andrews was authorized to rely on Baker's attorney's notice of unavailability as a representation that the attorney still represented Baker and that the attorney (and Baker) needed a continuance because Baker's attorney would not be available for the trial date which Judge Andrews had set.

Baker attempts to distinguish *Jeske* by pointing out that in the October 11 hearing he asked for an immediate trial. But Baker had asked for an immediate trial based upon his attorney's representation that she believed that she could get another attorney to represent Baker on extremely short notice. In context, whether she would be able to do this seems highly questionable. She would be asking another attorney in her office, who was unfamiliar with the case, to take over a felony-level trial on one-day's notice. In court, Baker's attorney did not appear to know which attorney might take over the case. She acknowledged that this was an unusual situation and she would have to consult with her supervisors to determine how to proceed. Under these circumstances, it would not be surprising if Baker's attorney was unable to get another attorney to take over Baker's case on short notice and Baker would have to agree to a continuance. Therefore, even if we assume that Judge

---

5.  823 P.2d 6 (Alaska App.1991).

6.  *Id.* at 9.

7.  *Id.*

8.  *Id.* at 8 (citations omitted).

Andrews was aware of or should have been aware of Baker's objection to the continuance on October 11, she was entitled to rely on Baker's counsel's later request for a continuance. And Baker has not shown that he did anything subsequent to his counsel's filing for a continuance to bring to Judge Andrews' attention that he had any objection to the continuance.

Therefore, Judge Motyka's finding that the time which resulted from Baker's motion for a continuance resulted in the period of delay from October 13, 1999 through December 5, 1999 is supported by the record and supports his conclusion that Criminal Rule 45 was not violated. We accordingly affirm Judge Motyka's decision denying Baker's Criminal Rule 45 motion.

### Sentencing issues

Baker raises several issues concerning his composite sentence. Baker's composite sentence resulted from two incidents where Baker drove while intoxicated.

### The Kenai Case

On April 5, 1999, motorists reported seeing Baker drive through a red light, over curbs, and in excess of 80 miles per hour.[9] Soldotna Police Officer Joseph Shoemaker saw Baker lose control of his car just before he stopped him. Shoemaker concluded that Baker was intoxicated and arrested him.

At the police station, Baker yelled and screamed while the officer read the implied consent warning. Baker refused to submit to a breath test.[10]

On the way to a correctional facility, Baker managed to release his safety belt and to bring his handcuffed hands in front of him. He cursed at Officer Shoemaker and threatened the officer and his family.

Baker was ultimately convicted for felony driving while intoxicated and felony refusal to submit to a breath test. Both offenses are class C felonies.[11] Baker was a third felony offender for purposes of presumptive sentencing. Superior Court Judge Jonathan H. Link initially sentenced Baker to the 3-year presumptive term for each offense. Judge Link concluded that AS 28.35.032(p)(5) required him to impose the sentence for the breath test refusal consecutively to the driving while intoxicated sentence. He therefore sentenced Baker to consecutive 3-year terms, a composite sentence of 6 years of imprisonment.

Baker appealed his sentence to this court. In *Baker v. State*,[12] we concluded that AS 28.35.032(p)(5) required only the mandatory minimum sentence for breath test refusal to be imposed consecutively (in Baker's case 120 days). We therefore remanded the case to Judge Link for resentencing.[13]

By the time of resentencing, Judge Link was aware of the facts and the sentence in Baker's Anchorage case. Judge Link found that Baker was a worst offender, pointing out that Baker had been convicted of approximately 19 or 20 prior misdemeanors. Judge Link imposed a composite sentence of 5 years of imprisonment. He imposed the two 3-year presumptive sentences and made 2 years of the refusal to take the chemical test conviction consecutive to the driving while intoxicated conviction. Judge Link specifically refused to make this sentence concurrent to the Anchorage sentence. He stated that any adjustment would have to come from an adjustment to the Anchorage sentence.

### The Anchorage case

Baker was arrested on the Kenai case on April 5, 1999. He was released on bond on April 16. He was arrested on the Anchorage case on May 4. We have previously discussed the facts of this case. A jury convicted Baker of felony driving while intoxicated, a class C felony; refusal to take a chemical test, a class C felony; driving with license

9. *Baker v. State*, Memorandum Opinion and Judgment No. 4702 at 2 (Alaska App. May 7, 2003), 2003 WL 21019346 at *1.

10. *Id.* at 2, 2003 WL 21019346 at *1.

11. AS 28.35.030(a)(1) or (2), (n); AS 28.35.032(a), (p).

12. 30 P.3d 118 (Alaska App.2001).

13. *Id.* at 120.

revoked, a class A misdemeanor; and criminal mischief in the third degree, a class A misdemeanor. Baker was a third-felony offender for purposes of presumptive sentencing, and therefore faced a presumptive term of 3 years of imprisonment on each of the two class C felonies.

*Baker's prior criminal record*

Baker was 37 years old at the time he committed the Anchorage offenses. Baker's first felony conviction took place in 1981 when he was 19 years old. He was convicted of possession of marijuana for sale and sentenced to 120 days in jail. In the 1980s, Baker accumulated approximately 12 misdemeanor offenses. Most of these offenses are for driving without an operator's license or for driving while his license was suspended. In 1990, Baker was convicted of his second felony offense, making a false statement on a title application. Baker was sentenced to 1 year suspended and placed on 3 years' probation. But his probation was revoked in 1992 and Baker was ordered to serve 1 year of imprisonment. In September 1991, Baker was convicted of misconduct involving a weapon in the first degree, then a class C felony. He was sentenced to 3 years with 1 year suspended.

In 1997, Baker committed his first driving while intoxicated offense. In this case, Baker was involved in a motor vehicle collision. Less than a month later, Baker was convicted of his second driving while intoxicated offense and for driving while his license was suspended. Two months later, Baker again drove while his license was suspended. Baker's Kenai offenses occurred April 5, 1999 and his Anchorage offenses occurred less than 30 days after.

*Sentencing on the Anchorage case*

The State gave notice of several aggravating factors: that Baker had previously been convicted of a more serious class of felony offense,[14] that Baker had three or more prior felony convictions,[15] that Baker's conduct in the driving while intoxicated offense was among the most serious conduct included in the definition of the offense,[16] that Baker was on release on another felony charge,[17] and that Baker had a prior history of similar offenses.[18] Baker only contested the most serious conduct aggravator. But Judge Motyka found all five aggravating factors.

In sentencing Baker, Judge Motyka considered Baker's prior criminal history. He concluded that Baker was a worst offender with poor prospects for rehabilitation. He pointed out that Baker had consistently failed on probation. He considered Baker's actions and his sentence at that time (6 years). He pointed out, at the time that Baker committed the Anchorage offenses, he had just been released on felony driving while intoxicated and refusal charges knowing that he faced a substantial sentence in the Kenai case. Yet he had committed similar offenses in Anchorage. He concluded that this sequence of events showed that Baker was completely out of control. Judge Motyka imposed a sentence of 5 years for felony driving while intoxicated, 5 years for felony refusal to take the chemical test, 1 year for license revoked and 6 months for criminal mischief in the third degree. Judge Motyka imposed these sentences consecutively to each other for a composite sentence on the Anchorage case of 11½ years of imprisonment.

*Why we conclude that, as a matter of law, Baker's Anchorage sentence is concurrent with his Kenai sentence*

▇ In his written judgment in the Anchorage case, Judge Motyka expressly provided that Baker's sentence of 11½ years of imprisonment was to be served consecutively to the sentence in the Kenai case. Since the Kenai sentence, after Judge Link revised it, totaled 5 years of imprisonment, this would result in Baker receiving a composite sentence of 16½ years of imprisonment.

**14.** AS 12.55.155(c)(7).

**15.** AS 12.55.155(c)(15).

**16.** AS 12.55.155(c)(10).

**17.** AS 12.55.155(c)(12).

**18.** AS 12.55.155(c)(21).

But Baker argues that Judge Motyka never stated that the Anchorage sentence would be served consecutively to the Kenai sentence in his oral sentencing remarks. Baker points out that the Alaska Supreme Court and this court have repeatedly held that a judge's oral sentencing remarks control over any conflicting provision in the written judgment.[19] Baker contends that because Judge Motyka did not explicitly state during his sentencing remarks whether he intended to impose the Anchorage sentence consecutively or concurrently to the Kenai sentence, the sentences are concurrent as a matter of law. Baker relies on *Griffith v. State*.[20]

In its brief, the State does not appear to challenge Baker's legal conclusions. Rather, the State asserts that Judge Motyka's sentencing remarks establish "a clear intent to impose the more severe sentence reflected in the written judgment." The State argues that Judge Motyka emphasized that Baker's Anchorage offenses were distinct from the Kenai offenses and that the Anchorage case had to be viewed "on its own merits." The State points out that Judge Motyka rejected Baker's suggestion that the Kenai sentence was a sufficient punishment for both cases. The State also points out that Judge Motyka specifically referred to the fact that Baker committed the Anchorage offenses while he was out on bail on the Kenai case and concluded that Baker was undeterable.

Until 1982, AS 12.55.025(e) provided that if "the [sentencing] court does not specify, the [defendant's] sentences of imprisonment shall run concurrently."[21] But in 1982, the legislature amended AS 12.55.025(e).[22] We interpreted this amended statute to express a legislative preference for consecutive sentences.[23] (AS 12.55.025(e) was repealed by the legislature in 2004.[24] But AS 12.55.025(e)

was in effect when Baker committed his crime and was sentenced. We therefore decide the case under the statute which was in effect at that time.)

In *Griffith v. State*, we construed the 1982 version of AS 12.55.025(e). In *Griffith*, the State pointed out that the former statute created a presumption in favor of concurrent sentences, and that this presumption no longer existed under the 1982 revision.[25] But we concluded that despite the altered presumption, "in those situations where the sentencing judge has discretion to impose concurrent sentences he should make findings to justify the imposition of a consecutive sentence."[26]

It appears that *Griffith* is the only published case where we have addressed the findings which a court had to make in order to impose consecutive sentences under the 1982 version of AS 12.55.025(e). And in *Griffith*, we stated that the trial judge had to make findings which justified the consecutive sentence. Therefore the *Griffith* decision retained the rule that a sentencing judge must specify that a sentence is consecutive in order to impose a sentence consecutively.

In this appeal, as we have pointed out, the State has not argued for a different rule. Rather, the State has argued that Judge Motyka's sentencing remarks clearly establish his intent to impose his sentence consecutively to the Kenai sentence. But we see Judge Motyka's sentencing remarks as, at best, ambiguous. Judge Motyka certainly stated that he saw Baker's Anchorage offense as distinct from the Kenai offense and rejected Baker's suggestions that the Kenai sentence was sufficient punishment for both cases. But Judge Motyka imposed a sentence of 11½ years of imprisonment. This was a sentence substantially greater than the

**19.** *Graybill v. State*, 822 P.2d 1386, 1388 (Alaska App.1991); *Figueroa v. State*, 689 P.2d 512, 514 (Alaska App.1984); *Whittlesey v. State*, 626 P.2d 1066, 1067–68 (Alaska 1980).

**20.** 675 P.2d 662, 664 (Alaska App.1984), *overruled on other grounds, State v. Andrews*, 707 P.2d 900 (Alaska App.1985), *affirmed* 723 P.2d 85 (Alaska 1986).

**21.** Quoted in *Andrews*, 707 P.2d at 906 n. 8.

**22.** *See* ch. 143, § 1, SLA 1982.

**23.** *Andrews*, 707 P.2d at 910.

**24.** Ch. 125, § 7, SLA 2004.

**25.** 675 P.2d at 664. *See also Wells v. State*, 706 P.2d 711 (Alaska App.1985).

**26.** *Id.*

Kenai sentence (which at that time was 6 years of imprisonment).

Had Judge Motyka imposed a sentence of 5 or 6 years of imprisonment, the State would have a stronger argument that his sentencing remarks demonstrated his intent to impose the Anchorage sentence consecutively to the Kenai sentence. Judge Motyka clearly set out his intent to punish Baker separately for the Anchorage case. But Judge Motyka imposed a sentence of 11½ years of imprisonment for the Anchorage case—a sentence which, even when imposed concurrently, represented substantial additional punishment for the Anchorage case. Judge Motyka's sentencing remarks are, therefore, consistent with imposing a concurrent sentence in the Anchorage case.

In interpreting Judge Motyka's sentencing remarks, we also note that a composite term of 16½ years of imprisonment would make Baker's sentence comparable to the sentences imposed in serious drunk driving homicide cases. Yet Judge Motyka gave no indication he considered Baker's offenses as comparable in seriousness to vehicular homicide.[27] Consequently, we conclude that it is reasonable to interpret Judge Motyka's remarks as imposing a sentence of 11½ years to be served concurrently with the Kenai sentence. Because we interpret Judge Motyka's sentencing remarks as imposing Baker's Anchorage sentence concurrent to the Kenai sentence, Judge Motyka had no authority, in the written judgment, to increase Baker's sentence by imposing the sentence consecutively to the Kenai sentence. Such a modification would constitute an illegal increase in Baker's sentence and violate Baker's double jeopardy rights.[28] Therefore, Judge Motyka's oral sentencing remarks in which he imposed the Anchorage sentence concurrent with the Kenai sentence are controlling.

*Judge Motyka did not err in finding that Baker's conduct was among the most serious conduct included in the definition of Baker's driving while intoxicated offense.*

■ Baker contends that Judge Motyka erred in finding the aggravating factor that Baker's conduct was among the most serious conduct included in the definition of the offense of driving while intoxicated.[29] In concluding that the State had met the burden of proving this aggravator by clear and convincing evidence, Judge Motyka found that Baker had a high blood alcohol level and that the evidence showed that Baker was also under the influence of cocaine. He pointed out that Baker drove on the sidewalk and could have easily injured or killed any number of people with his actions. Judge Motyka's findings are supported by the record.

*Judge Motyka erred in finding that Baker had previously been convicted of a more serious felony*

On appeal, Baker contends that Judge Motyka erred in finding that Baker had previously been convicted of a more serious felony. Baker did not raise this contention in the trial court, but on appeal the State concedes that Judge Motyka erred in making this finding. We accept the State's concession.[30] Baker's former conviction for weapons misconduct was a class C felony, the same as his current convictions for felony driving while intoxicated and felony refusal to take a breath test.

*Judge Motyka erred in concluding that he was required by law to impose Baker's 3-year presumptive sentence for felony refusal to take a breath test consecutively to the sentence for felony driving while intoxicated*

■ Baker contends that Judge Motyka erred in concluding that he was required to

27. *See Puzewicz v. State,* 856 P.2d 1178 (Alaska App.1993) (Puzewicz had a record of driving while intoxicated convictions and had failed at attempts at alcohol treatment. We upheld a sentence of 18 years with 5 years suspended for two counts of second degree murder.); *Pusich v. State,* 907 P.2d 29 (Alaska App.1995) (The defendant was convicted of one count of manslaughter and one count of first-degree assault for killing three people and seriously injuring a fourth. Pusich had an extensive history of driving while

intoxicated with extreme recklessness. We upheld a sentence of 25 years with 7 years suspended.)

28. U.S. Const. amend. V; Alaska Const. art. I § 9.

29. AS 12.55.155(c)(7).

30. *Marks v. State,* 496 P.2d 66, 67 (Alaska 1972).

impose a minimum of two consecutive 3–year presumptive sentences. Judge Motyka made his decision before we issued our decision in *Baker v. State*[31] where we concluded that AS 28.35.032(p)(5) required only the mandatory minimum sentence for breath test refusal to be imposed consecutively. We therefore conclude that Judge Motyka erred in imposing his sentence under the assumption that he was required to impose a minimum of six years of imprisonment.

### *We remand the case to Judge Motyka to reconsider his sentence*

Because we have found that Judge Motyka erred in finding the aggravating factor that Baker had previously been convicted of a more serious felony and that he erred in concluding that he was required by law to impose a minimum sentence of 6 years of imprisonment, we remand the case to allow Judge Motyka to reconsider his sentence. We have concluded that we should not address Baker's claim that his sentence is excessive at this time. On remand, in deciding an appropriate sentence to impose, Judge Motyka should consider Baker's offenses in relation to sentences which defendants have received for other similar offenses.[32]

### *Conclusion*

We conclude that the trial judge did not err in denying Baker's motion to dismiss under Criminal Rule 45. We conclude that we must interpret the trial court's sentencing remarks as imposing Baker's Anchorage sentence concurrently with his Kenai sentence. In light of our conclusion that the trial court committed error in imposing Baker's sentence, we remand the sentence to allow the trial court to reconsider its sentence. The conviction is AFFIRMED. The sentence is VACATED and this case is remanded to the superior court for resentencing in conformity with this opinion.

MANNHEIMER, Judge, concurring.

MANNHEIMER, Judge, concurring.

I write separately to address the speedy trial issue because I analyze this issue differently from my colleagues.

The resolution of Baker's speedy trial claim hinges on the recorded events of October 11–12, 1999, but it also hinges on certain other things that are not part of the record.

The record shows that the parties met in court on the morning of Monday, October 11th to decide when Baker's trial would commence. Baker's assistant public defender announced that she would be unavailable for two weeks starting on Wednesday, October 13th. The prosecutor then announced that the State had witness problems: key witnesses would not be available until October 18th and then would be unavailable for six weeks starting on October 21st. In other words, it appeared that if Baker's trial was going to be held before December, only three days were available: October 18th–20th.

For his part, Baker was opposed to any continuance; he wanted a trial as soon as possible. The judge presiding at this hearing, District Court Judge Natalie K. Finn, explained to Baker that if he insisted on an immediate trial, this would mean going to trial with a new attorney who was unfamiliar with his case. Baker told Judge Finn that he was willing to proceed with an unprepared attorney if that was necessary to procure an immediate trial.

Judge Finn then set Baker's trial for October 19th and 20th (with jury selection to be held on October 15th). As explained above, Baker's assistant public defender had announced that she would unavailable on these dates, so these trial dates necessarily required the Public Defender Agency to assign a new attorney to Baker's case.

But later that same afternoon, Presiding Superior Court Judge Elaine M. Andrews notified the parties that Baker's trial would commence the next day (October 12th). This change of Baker's trial date was the first in a series of events that find no ready explanation in the record.

---

**31.** 30 P.3d 118.

**32.** AS 12.55.005(1); *Williams v. State,* 809 P.2d 931, 935 (Alaska App.1991).

The record does not reveal why Judge Andrews decided to set aside the trial dates that had been announced by Judge Finn earlier that day, or why Judge Andrews decided that Baker's trial should begin the very next day. Conceivably, Judge Andrews set Baker's trial for October 12th because that was the last day that Baker's current attorney would be available. Judge Andrews may have been concerned that a new defense attorney who took over Baker's case at the last minute would be unable to represent Baker effectively. But this is concededly speculation on my part. The record contains no explanation for Judge Andrews's action.

The record is similarly sparse concerning the explanation for the two attorneys' strange responses to this last-minute rescheduling of Baker's trial. As explained above, the trial dates set by Judge Finn (October 19th and 20th) had been hammered out after much wrangling between the parties. One would therefore expect howls of protest from Baker's attorney, and from the prosecutor as well, when these two attorneys received notice on the afternoon of October 11th that Judge Andrews had vacated Judge Finn's trial dates and had instead set Baker's trial for the following day (October 12th).

But neither attorney responded to Judge Andrews by telling her that they had just been in court earlier that day, and that they had settled on October 19th and 20th as the only trial days that were acceptable to all sides. Instead, when Baker's assistant public defender filed her response to Judge Andrews's new trial date, she simply reiterated that she would be unavailable between October 13th and October 26th. And when the prosecutor responded to Judge Andrews, he simply reiterated that his witnesses would be unavailable unless the trial was held between October 18th and October 20th.

Why didn't either of these two attorneys protest Judge Andrews's decision and tell her that they wished to stick with the trial dates hammered out in front of Judge Finn earlier that day? The record contains no explanation.

My two colleagues infer, from this lack of protest, that the Public Defender Agency told Baker's assistant public defender that there would be no replacement attorney—either because the Agency was unable to assign a new attorney to Baker's case on a week's notice, or because the Agency was unwilling to send an attorney into court unprepared. Following this train of inference, my colleagues conclude that Baker's attorney did not insist on Judge Finn's trial dates because the attorney knew that she was still the one representing Baker, and because she would not be available for a trial on those dates.

My colleagues' inferences may be true. Alternatively, one could infer that the defense attorney's lack of protest stemmed from the fact that, later on October 11th, Baker told the defense attorney that he had reconsidered his situation and had decided that he did not wish to go to trial with an unprepared attorney.

The problem is that the record available to us does not resolve whether either or both of these inferences are true, or whether there is yet another explanation for the two attorneys' seemingly strange responses to Judge Andrews's action.

My colleagues offer the alternative theory that, even if Judge Andrews could not know for sure what prompted the two attorneys' responses, she was nevertheless authorized to take the attorneys' responses at face value and to schedule Baker's trial for early December—the amount of delay that was apparently needed so that the trial would take place when the two attorneys and their witnesses were available.

As legal support for this alternative, my colleagues rely on this Court's decision in *State v. Jeske*, 823 P.2d 6 (Alaska App.1991), where we held that when a defense attorney requests a continuance, "[the] judge setting the date for the defendant's trial is entitled to rely upon the fact that [Criminal Rule 45] is tolled during that continuance, at least until the judge is affirmatively apprised of the defendant's objection to the continuance."[1] My colleagues reason that because

1. *Jeske*, 823 P.2d at 9.

Baker's attorney was asking for a continuance, and because Judge Andrews was never affirmatively notified that Baker did not assent to his attorney's request, Judge Andrews was justified (under *Jeske*) in concluding that Rule 45 would be tolled during the requested continuance.

To me, this comes too close to legal legerdemain. Yes, Baker did not affirmatively notify Judge Andrews that he did not assent to his attorney's request for a continuance. But Baker was not standing by his attorney's side on the afternoon of October 11th, or during the business day on October 12th. Instead, he was in jail. Given Baker's situation, he did all that he could reasonably be expected to do to make his position clear: Only hours before, when Baker appeared in court in front of Judge Finn, he vociferously objected to any further delay of his trial, and he announced himself ready to proceed to trial with an unprepared attorney if that is what it took to insure a speedy trial.

Under these circumstances, I find it unconscionable to rely on *Jeske* for the proposition that, because Baker did not personally notify Judge Andrews that he objected to his attorney's request for a continuance, Judge Andrews could presume that Baker assented to the request.

That being said, I agree with my colleagues that we should affirm the district court's rejection of Baker's speedy trial claim. I reach that conclusion because I believe that "burden of proof" is the true question confronting this Court.

The record fails to explain what exactly transpired during the 36 hours following the trial-setting conference in front of Judge Finn on October 11th. When a litigant comes to this Court and seeks reversal of a trial court's judgement, it is the litigant's burden to show that error was committed and that this error compromised or defeated the litigant's legal rights. When the record is silent regarding the facts that are critical to a resolution of the litigant's claim, this means that the litigant has failed to meet this burden.

If I believed that Baker had not yet had a fair opportunity to make his record, I would vote to have the trial court investigate these factual issues on remand. But Baker had the chance to develop all of these facts when he litigated his motion to dismiss, and he failed to do so. I accordingly join my two colleagues in voting to affirm the district court's ruling on the speedy trial issue.